# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46593-1-II |
| Respondent, | |
| v. | PART PUBLISHED OPINION |
| GREYCLOUD LAWLER, | |
| Appellant. | |

MAXA, J. – Greycloud Lawler appeals his convictions for second degree rape, second degree kidnapping, second degree assault, felony harassment, possession of a controlled substance, and interference with reporting domestic violence.

In the published portion of this decision, we hold that (1) the trial court did not abuse its discretion in failing to dismiss sua sponte an allegedly biased juror who Lawler chose not to excuse, and (2) defense counsel's failure to challenge the allegedly biased juror did not constitute ineffective assistance of counsel. In the unpublished portion of this opinion, we reject Lawler's additional arguments as well as claims asserted in a statement of additional grounds (SAG). Accordingly, we affirm Lawler's convictions.

## FACTS

*Motel Incident*

Lawler and MDJ started dating in March 2013. On February 14, 2014, they checked into a motel in Hazel Dell. After dinner they had an argument. The argument escalated, and Lawler

became violent when MDJ said she wanted to leave. Lawler covered MDJ's mouth as she tried to scream and eventually caused her to lose consciousness. When MDJ regained consciousness, Lawler strangled her again until she passed out.

The violence ultimately subsided, and Lawler and MDJ slept next to one another. Lawler slept with a knife at his side. In the middle of the night, MDJ woke up to use the bathroom. Lawler, upset by the thought of MDJ leaving the motel room, took the bedding from the bed and his knife and slept in front of the door so MDJ could not leave. Lawler threatened MDJ, telling her that she was not going home and that she was not going to see her children again.

The next morning, MDJ told Lawler that she was upset about the night before and that she did not want to leave with him. Provoked by MDJ's comments, Lawler dragged her off the bed and into the bathroom, and threatened to drown her in the toilet. When Lawler and MDJ were preparing to leave the motel, Lawler told MDJ that he had come to the room to have sexual intercourse and that they were not leaving until that happened. Lawler then forced MDJ to have intercourse. Out of fear, MDJ did not fight Lawler, although she made clear to Lawler that she did not want to have intercourse.

Eventually MDJ was able to get out of the room and down to the front desk, where she told the motel clerk that she had been assaulted and called 911. Lawler left the motel on foot before the police arrived.

Police and medical personnel arrived at the motel and noticed bruising and scrapes on MDJ's face and bruising on her arms that resembled fingerprints. The paramedics transported MDJ to the hospital, and MDJ received treatment from a sexual assault nurse examiner. MDJ reported that she had been held against her will and repeatedly assaulted and raped and that she

was in pain and felt nauseous. Based on MDJ's physical condition and her complaints, the treating doctor prescribed MDJ pain and anti-nausea medications.

Police later arrested Lawler and found that he was carrying an eight-inch knife in a leather sheath, a 12-inch blade with no handle, and a balloon full of a powdery substance that later was identified as methamphetamine. The State charged Lawler with first degree rape, second degree kidnapping, second degree assault, felony harassment, possession of a controlled substance, and interference with reporting domestic violence. The State alleged that the rape, kidnapping and harassment were committed while Lawler was armed with a deadly weapon.

*Jury Selection*

During the questioning of prospective jurors, the prosecutor asked if any of the potential jurors had a family member or friend involved in a situation of sexual assault or physical violence. Juror 23 indicated that his mother had been removed from her biological father when she was a child, that his older half-sister had been raped by her stepfather, and that his niece who was living with him had been physically and mentally abused by her previous boyfriend.

The prosecutor asked whether these experiences would make it difficult for him to be fair and impartial, and juror 23 responded, "I don't see how I could be objective with all that past experience." Voir Dire Report of Proceedings (RP) at 32. When the prosecutor asked juror 23 if he could set his personal experiences aside and follow the trial court's instruction, he replied, "Honestly, I think that would be a pain in the neck, you know. I don't think I would be able to do that with all these experiences." Voir Dire RP at 33. Neither party nor the trial court followed up on juror 23's answers.

3

As voir dire progressed, defense counsel questioned several jurors regarding their previously expressed concerns and apprehensions, but did not further question juror 23. When defense counsel asked the potential jurors who would be uncomfortable serving on the jury, juror 23 raised his number. Neither the parties nor the trial court followed up on this response.

The trial court was actively involved in discussions with counsel about what jurors should be dismissed for cause. The trial court noted that "[w]e had quite a number of people who had concerns that they wouldn't be able to be fair due to issues related to the case." Voir Dire RP at 57. The trial court suggested that two jurors be dismissed, and neither party objected. Lawler challenged three other jurors for cause. However, the trial court did not mention juror 23 and Lawler did not challenge juror 23 for cause. Lawler then exercised five of his six preemptory challenges, none of which were for juror 23. And Lawler passed on the exercise of his final peremptory challenge. Juror 23 was seated on the jury.

*Verdict*

The jury found Lawler guilty of the lesser offense of second degree rape, second degree kidnapping, second degree assault, harassment, possession of a controlled substance, and interference with reporting domestic violence. The jury also found by special verdicts that Lawler committed the rape, kidnapping and harassment while he was armed with a deadly weapon.

Lawler appeals his convictions.

ANALYSIS

A.    TRIAL COURT'S FAILURE TO SUA SPONTE DISMISS A JUROR

Lawler argues that the trial court violated his constitutional right to a fair and impartial jury by failing to sua sponte dismiss juror 23. We disagree.

1.    Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant the right to trial by an impartial jury. *State v. Davis*, 175 Wn.2d 287, 312, 290 P.3d 43 (2012). To ensure this constitutional right, the trial court will excuse a juror for cause if the juror's views would preclude or substantially hinder the juror in the performance of his or her duties in accordance with the trial court's instructions and the jurors' oath. *State v. Gonzalez*, 111 Wn. App. 276, 277-78, 45 P.3d 205 (2002). When a defendant does not receive a trial by an impartial jury, the remedy is reversal. *Id.* at 282.

Either party may challenge a prospective juror for cause. RCW 4.44.130. Lawler argues that juror 23 demonstrated actual bias. Actual bias is a ground for challenging a juror for cause. RCW 4.44.170(2). Actual bias occurs when there is "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." *Id.* Although a party may challenge a juror for actual bias, the mere fact that a juror expresses or forms an opinion is not in itself sufficient to sustain a challenge. RCW 4.44.190. Instead, "the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially." *Id.*

The trial court also has authority from two sources to dismiss a juror without a challenge from a party during jury selection. First, RCW 2.36.110 provides:

> It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.

Second, CrR 6.4(c)(1) states:

> If the judge after examination of any juror is of the opinion that grounds for challenge are present, he or she shall excuse that juror from the trial of the case. If the judge does not excuse the juror, any party may challenge the juror for cause.

When a party does challenge a juror for cause, we review a trial court's ruling on that challenge for manifest abuse of discretion. *Davis*, 175 Wn.2d at 312.

> "The reason for this deference is that the trial judge is able to observe the juror's demeanor and, in light of that observation, to interpret and evaluate the juror's answers to determine whether the juror would be fair and impartial."

*Id*. (quoting *State v. Gentry*, 125 Wn.2d 570, 634, 888 P.2d 1105 (1995)); *see also State v. Noltie*, 116 Wn.2d 831, 839, 809 P.2d 190 (1991) (stating that "[c]ase law, the juror bias statute, our Superior Court Criminal Rules and scholarly comment all emphasize that the trial court is in the best position to determine a juror's ability to be fair and impartial"). The abuse of discretion standard also applies to dismissal of a juror under RCW 2.36.110, *State v. Elmore*, 155 Wn.2d 758, 768-69, 123 P.3d 72 (2005), and CrR 6.4(c)(1). *State v. Roberts*, 142 Wn.2d 471, 518-19, 14 P.3d 717 (2000).

The presence of a biased juror cannot be harmless, and allowing a biased juror to serve on a jury requires a new trial without a showing of prejudice. *State v. Irby*, 187 Wn. App 183, 193, 347 P.3d 1103 (2015). If the juror demonstrates actual bias, empaneling the biased juror is a manifest error. *Id.*

6

2.    Evidence of Actual Bias

During voir dire, juror 23 discussed three past experiences involving family members. The State asked whether these experiences would cause him difficulty being fair and impartial. Juror 23 said, "I don't see how I could be objective with all that past experience." Voir Dire RP at 32.  The State then asked if he could set aside his personal experiences and judge the case on its merits if the trial court asked him to do so.  Juror 23 replied, "Honestly, I think that would be a pain in the neck, you know.  I don't think I would be able to do that with all these experiences." Voir Dire RP at 33.

These statements show that juror 23 questioned whether he was capable of being fair and impartial or objective in judging the case on its merits.  But there was some slight equivocation in juror 23's answers.  He stated, "I don't see how" when asked if he could be objective rather that stating that he definitely could not be objective.  Voir Dire RP at 32.  And he said that "I don't think I would be able" to judge the case on the merits rather than stating that he definitely could not.  Voir Dire RP at 33.  Equivocal answers alone do not require that a juror be dismissed for cause. *State v. Rupe*, 108 Wn.2d 734, 749, 743 P.2d 210 (1987).  In addition, the experiences of juror 23's family members were nothing like the incident giving rise to the charges against Lawler.

However, there was never any attempt to rehabilitate juror 23.  As a result, he never stated on the record that he could be fair and impartial and that he could judge the case on its merits.

    3.    Trial Court's Obligation to Dismiss a Biased Juror Sua Sponte

Lawler did not challenge juror 23 for cause or exercise an available peremptory challenge to dismiss juror 23. Therefore, the question is whether the trial court was required to dismiss juror 23 sua sponte based on his voir dire responses.

    a.    Mandatory Duty to Excuse Biased Juror

Both RCW 2.36.110 and CrR 6.4(c)(1) create a mandatory duty to dismiss an unfit juror even in the absence of a challenge. RCW 2.36.110 states that "[i]t shall be the duty of a judge" to dismiss a juror who is unfit because of bias or other issues. "RCW 2.36.110 . . . place[s] a continuous obligation on the trial court to excuse any juror who is unfit and unable to perform the duties of a juror." *State v. Jorden*, 103 Wn. App. 221, 227, 11 P.3d 866 (2000).

CrR 6.4 (c)(1) states that the judge "shall" excuse a juror if grounds for a challenge are present. In applying CrR 6.4(c)(1), the Supreme Court stated:

> This rule makes clear that a trial judge may excuse a potential juror where grounds for a challenge for cause exist, notwithstanding the fact that neither party to the case exercised such a challenge. *In fact, the judge is obligated to do so.*

*Davis*, 175 Wn.2d at 316 (emphasis added). However, *Davis* involved the trial court's sua sponte dismissal of a juror even though neither party challenged the juror, not its *failure* to dismiss a juror sua sponte. *Id.* at 311.

    b.    Interfering with Jury Selection Strategy

On the other hand, a trial court should exercise caution before injecting itself into the jury selection process. The State argues:

> [G]iven the strategic importance of voir dire and the wide room for strategic decisions a defendant can make concerning which jurors to strike or accept, a court must not wade into the jury selection process *sua sponte* dismissing jurors absent

an unmistakable demonstration of bias lest it interfere with a defendant's right to control his defense.

Brief of Resp't at 20.

The State's argument has merit. Whether to keep a prospective juror on the jury panel or whether to dismiss a juror often is based on the trial counsel's experience, intuition, strategy, and discretion. Trial counsel may have legitimate, tactical reasons not to challenge a juror who may have given responses that suggest some bias. *See State v. Johnston*, 143 Wn. App. 1, 17, 177 P.3d 1127 (2007) (stating that defense counsel's decision not to challenge a juror for cause despite some evidence that the juror was biased could be a legitimate trial strategy). A trial court that sua sponte excuses a juror runs the risk of disrupting trial counsel's jury selection strategy.

The State cites to *State v. Coristine*, in which the trial court gave a jury instruction on a statutory affirmative defense over the defendant's objection. 177 Wn.2d 370, 374, 300 P.3d 400 (2013). In *Coristine*, the Supreme Court held that because the Sixth Amendment gives a defendant the right to present a defense, it requires deference to the defendant's strategic decisions. *Id*. at 375. The court stated:

> To further the truth-seeking function of trial and to respect the defendant's dignity and autonomy, the Sixth Amendment recognizes the defendant's right to control important strategic decisions.

*Id*. at 376.

We believe that the rule stated in *Coristine* applies equally to a defendant's strategic decision not to challenge for cause or exercise a preemptory challenge regarding a prospective juror. The difference here is that the trial court did not specifically address this issue with defense counsel. Therefore, the record does not directly show that defense counsel's decision not to challenge juror 23 was strategic.

9

c.    *Irby* Decision

In *Irby*, Division One of this court held that the trial court erred by not sua sponte excusing a juror who demonstrated actual bias.  187 Wn. App. at 196-97.  In *Irby*, a prospective juror explained that she may not be able to give the parties a fair trial because "I'm more inclined towards the prosecution I guess."  *Id*. at 190.  When the court asked if that would impact her ability to be fair and impartial and whether she could listen to both sides, the juror responded "I would like to say he's guilty."  *Id*.  There was no follow up to this exchange, and the juror was seated on the jury.  *Id.*

The court analyzed the issue under RCW 4.44.170(2) and .190, and noted that the trial court has broad discretion when determining whether a particular potential juror is able to be fair and impartial. *Id*. at 193-94.  However, the court stated that the juror's answer that she "would like to say he's guilty" was akin to an unqualified statement that she did not think she could be fair. *Id*. at 196.  In addition, the juror did not give an assurance that she had an open mind on the issue of guilt. *Id*.  As a result, the court concluded that the juror demonstrated actual bias and that seating her on the jury was manifest constitutional error. *Id*. at 197.  The court held:

> One of the jurors said during voir dire that she "would like to say he's guilty."
> There was no inquiry by the court or the prosecutor that might have neutralized the
> meaning of these words.  When a juror makes an unqualified statement expressing
> actual bias, seating the juror is a manifest constitutional error.

*Id.* at 188.

*Irby* is somewhat unique in that the defendant had waived both his right to be represented at trial and his right to be present. *Id*.  Therefore, the jury was selected without any participation by the defendant. *Id*. at 189.  Arguably, this placed a greater burden on the trial court to excuse biased jurors.  The court stated: "The record reflects that the trial judge and the prosecutor knew

10

that Irby's refusal to participate did not excuse them from the duty of impaneling a fair and impartial jury." *Id*. at 196.

> d.  Analysis

Several factors convince us that the trial court did not abuse its discretion in failing to sua sponte dismiss juror 23 because of his alleged bias.

First, we emphasize again that the trial court is in the best position to evaluate whether a juror must be dismissed. *Davis*, 175 Wn.2d at 312. Our review is limited to juror 23's transcribed voir dire answers. We cannot assess juror 23's tone of voice, facial expressions, body language, or other forms of nonverbal communication when making his statements. We also are unable to assess juror 23's nonverbal reactions to the trial court, counsel, or the other jurors' voir dire answers. The trial court was able to observe and evaluate juror 23 in a way that we cannot.

Second, as noted above juror 23's answers were at least slightly equivocal. His answers gave the impression that he was unsure whether he could be objective, not that he had a firm conviction of that fact. His answers seemed to convey a vague, nonspecific discomfort with the case rather than a firm bias. And his statement that it would be a "pain in the neck" to judge the case on its merits, Voir Dire RP at 33, seems to refer to inconvenience rather than bias. Unlike in *Irby*, we do not consider juror 23's statements to be "unqualified statement[s] expressing actual bias." *Irby*, 187 Wn. App. at 188. And again, the nonverbal aspect of these answers would be very important. For example, if juror 23 shrugged his shoulders or rolled his eyes when making these statements, the trial court and counsel may not have perceived any actual bias.

Third, the record shows that the trial court was alert to the possibility of biased jurors. This is not a case where the trial court was not paying attention to voir dire. The trial court expressly noted that several jurors stated concerns that they could not be fair. And before either party made challenges for cause the trial court suggested that two jurors be dismissed. Yet the trial court did not mention juror 23 or suggest that he be dismissed. This fact suggests that the trial court observed something during voir dire that lead it to believe that juror 23 could be a fair juror.

Fourth, the record shows that defense counsel also was alert to the possibility of biased jurors. This is not a case where defense counsel abdicated his responsibility to critically evaluate the jurors. Defense counsel agreed when the trial court suggested dismissing two jurors, moved to excuse two additional jurors for cause, and exercised five peremptory challenges. Yet defense counsel did not challenge juror 23 – or even ask follow up questions – despite juror 23's voir dire answers and his indication that he would be uncomfortable serving on the jury. This fact suggests that defense counsel observed something during voir dire that led him to believe that juror 23 could be a fair juror.

Fifth, it is significant that Lawler had a peremptory challenge available that he chose not to use on juror 23 and in fact remained unused.[1] This is not a situation where Lawler had no choice but to accept a biased juror. The fact that Lawler did not use an available peremptory challenge on juror 23 leads to a presumption that Lawler wanted juror 23 on the jury.

---

[1] It could be argued that not using a peremptory challenge on juror 23 waived Lawler's ability to challenge the trial court's failure to dismiss juror 23 sua sponte. *See State v. Crawford*, 21 Wn. App. 146, 151, 584 P.2d 442 (1978). However, the State does not make this argument and therefore we do not address it.

12

Finally, we acknowledge that the trial court must be careful not to interfere with a defendant's strategic decisions regarding jury selection. Although a trial court does have a duty to dismiss biased jurors, a trial court in the exercise of its discretion may legitimately be less willing to dismiss a juror sua sponte than to grant a for cause challenge. Here, because Lawler did not challenge juror 23 for cause or use an available preemptory challenge to dismiss him, the trial court may have concluded that Lawler had made a strategic decision that he wanted juror 23 to serve on the jury despite his voir dire responses.

Based on all these factors, we hold that the trial court did not abuse its discretion in failing to excuse juror 23 sua sponte.

B.     INEFFECTIVE ASSISTANCE OF COUNSEL

Lawler argues that defense counsel's failure to challenge juror 23 for cause constitutes ineffective assistance of counsel. We disagree.

1.    Standard of Review

We review claims of ineffective assistance of counsel de novo. *State v. Hamilton*, 179 Wn. App. 870, 879, 320 P.3d 142 (2014). To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the trial would have been different. *Id.* at 34.

We begin our analysis with a strong presumption that counsel's performance was reasonable. *Id.* at 33. To rebut this presumption, the defendant must establish the absence of any " '*conceivable* legitimate tactic explaining counsel's performance.' " *Id.* (emphasis added) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). If defense counsel's conduct can be considered to be a legitimate trial strategy or tactic, counsel's performance is not deficient. *Grier*, 171 Wn.2d at 33.

2.    Analysis

Defense counsel neither challenged juror 23 for cause nor exercised a preemptory challenge to remove juror 23. And defense counsel exercised only five of Lawler's six preemptory challenges, ultimately foregoing the final challenge.

Lawler argues that the decision to not challenge juror 23 was unreasonable because he had stated an inability to be objective and follow the court's instructions. However, as stated above we must presume that defense counsel's performance was effective. Therefore, we must presume that defense counsel wanted juror 23 to sit on the jury despite his answers in voir dire. Otherwise, defense counsel would have exercised the unused preemptory challenge to excuse him.

Lawler also argues that defense counsel's failure to challenge juror 23 cannot be deemed a tactical decision. However, Lawler cannot establish the absence of any conceivable legitimate tactic for not excusing juror 23. Jury selection involves strategic and tactical decisions for defense counsel. *See Grier*, 171 Wn.2d at 31. Defense counsel may have thought juror 23 was a good juror despite his voir dire responses because of his background, other personal characteristics, mannerisms, or nonverbal communication. Or defense counsel may have

preferred juror 23 over the person who would have been seated on the jury if juror 23 was excused.   Therefore, there are conceivable legitimate tactical reasons for defense counsel's decision to not challenge juror 23, and Lawler cannot overcome the presumption of effective performance.

Accordingly, we hold that Lawler's claim for ineffective assistance of counsel fails.

In the unpublished portion of this opinion we consider and reject Lawler's additional arguments.  Accordingly, we affirm Lawler's convictions.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

We further hold that (1) the trial court did not violate Lawler's right to confront the witnesses against him by refusing to allow defense counsel to cross-examine the victim about her drug-seeking behavior, (2) the prosecutor did not improperly comment about Lawler's demeanor at trial, (3) the prosecutor did not engage in misconduct by making improper statements during closing argument, (4) defense counsel's failure to request a lesser included instruction of unlawful imprisonment relating to his second degree kidnapping charge did not constitute ineffective assistance of counsel, (5) the State presented sufficient evidence to support deadly weapons sentence enhancements, and (6) Lawler is not entitled to relief under the cumulative error doctrine.

ADDITIONAL FACTS

*Exclusion of MDJ's Drug-Seeking Behavior*

During motions in limine, Lawler argued that MDJ had been asking for pain medication up until the day of the incident, and he wanted to address this evidence during cross-examination. The trial court denied Lawler's motion and prevented defense counsel from referencing MDJ's alleged drug-seeking behavior unless defense could prove that the relevance of the evidence outweighed its highly prejudicial effect.

*State's Closing Argument*

During closing argument, the prosecutor reminded the jury of the "uncomfortable situation" of MDJ testifying about a nonconsensual experience. 6 RP at 563. The prosecutor stated that Lawler could "eye" MDJ and "stare her down" while she testified. 6 RP at 564. Lawler objected, stating there was no evidence that any such conduct had occurred. In response, the trial court instructed the jury that what the attorneys say is not evidence, and that it was up to the jury to determine the evidence from the facts presented.

During rebuttal argument, the prosecutor referred to evidence that defense counsel discussed as a red herring. Lawler did not object to this statement.

ANALYSIS

A. RIGHT TO CONFRONTATION

Lawler argues that the trial court's denial of defense counsel's cross-examination that sought to address MDJ's drug-seeking behavior violated his right to confront MDJ. We disagree.

1.    Legal Principles

Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution, a defendant in a criminal case has the right to be confronted with the witnesses against him. *State v. McDaniel*, 155 Wn. App. 829, 846, 230 P.3d 245 (2010). The most fundamental aspect of this right is the ability to conduct a meaningful cross-examination of adverse witnesses. *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002).

But the right to cross-examine adverse witnesses is not without limits. *Id.* The confrontation right is limited by general considerations of relevance as reflected in ER 401 and ER 403. *Id.* at 621. Therefore, a defendant's constitutional right to present a defense does not extend to irrelevant evidence. *State v. Jones,* 168 Wn.2d 713, 720, 230 P.3d 576 (2010). Similarly, the trial court may deny cross-examination if the "evidence sought is vague, argumentative, or speculative." *Darden*, 145 Wn.2d at 620-21.

However, if evidence is relevant, the State has the burden of showing that " 'the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial.' " *Jones*, 168 Wn.2d at 720 (quoting *Darden*, 145 Wn.2d at 622). Further, relevant evidence can be excluded only if the State's interest in excluding prejudicial evidence outweighs the defendant's need for the information sought. *Jones*, 168 Wn.2d at 720. The more essential the witness to the State's case, the more latitude the defendant should be given to explore motive, bias or credibility. *Darden*, 145 Wn.2d at 619.

Courts generally review alleged violations of the confrontation right de novo. *State v. Jasper*, 174 Wn.2d 96, 108, 271 P.3d 876 (2012). However, when the confrontation issue relates to the admissibility of evidence, the trial court's ruling on admissibility is reviewed for abuse of

discretion. *Darden*, 145 Wn.2d at 619. Abuse of discretion exists when the trial court's ruling is manifestly unreasonable or based on untenable grounds or reasons. *Id.*

###### 2. Admissibility Analysis

Lawler sought to cross-examine MDJ regarding her admission that she had been asking for pain medication before the incident. He argued that she complained of pain at the emergency room in order to obtain the pain medication that she had been seeking.

If Lawler's argument had been that MDJ fabricated the entire incident in order to obtain medication, her drug-seeking behavior may have had some relevance. However, Lawler argued only that she complained of pain at the emergency room in order to obtain pain medication.[2] Whether or not MDJ actually was in pain at the emergency room had minimal relevance to whether she had been assaulted, kidnapped and raped. Further, there is no question that evidence regarding drug-seeking behavior was prejudicial. The trial court in its discretion ruled that the prejudicial effect of this evidence outweighed its relevance.

Finally, the trial court expressly stated that its ruling on admissibility would be reconsidered if Lawler came forward with additional argument regarding the relevance of MDJ's drug-seeking behavior. Lawler did not make any further argument or revisit this issue when MDJ testified.[3]

---

[2] Lawler argues on appeal that his theory at trial was that MDJ "made up many of the details of the story she told at the hospital in order to obtain pain medication." Br. of Appellant at 19. However, the argument Lawler made at trial was not this broad.

[3] It appears that in opening statement (which was not transcribed), Lawler said something that made the State comment about drug-seeking behavior. The trial court did not remember excluding the evidence. The trial court stated that if the State opened the door on direct, Lawler would have the opportunity to inquire regarding this subject. The trial court did allow Lawler to

We hold that the trial court did not abuse its discretion in denying Lawler's initial request to cross-examine MDJ regarding her drug-seeking behavior. Accordingly, we hold that the trial court did not violate Lawler's constitutional right to confront witnesses against him.

B.     DEFENDANT'S DEMEANOR AT TRIAL

The prosecutor pointed out during closing argument that MDJ testified while Lawler sat a few feet away, where he could "eye her, stare her down." 6 RP at 564. Lawler argues that the prosecutor's statement improperly suggested that the jury should consider Lawler's demeanor at trial in deciding the case.[4] We disagree.

1.     Legal Principles

Article I, section 22 of the Washington Constitution recognizes a defendant's right to appear at trial. Lawler argues that the prosecutor's statement violated article I, section 22 by asking the jury to draw a negative inference from his presence at trial. However, Lawler cites no applicable authority to support his argument that commenting on a defendant's demeanor violates the constitution.[5]

---

cross-examine MDJ as to whether or not she had been using marijuana or prescription drugs the night of the incident.

[4] Lawler also argues that the trial court erred when, after Lawler objected, it gave the jury a generic instruction about closing argument not being evidence rather than specifically instructing the jury to disregard the prosecutor's statement.

[5] Lawler cites to *State v. Martin*, 171 Wn.2d 521, 252 P.3d 872 (2011) to support his argument. However, *Martin* involved a prosecutor's cross-examination of the defendant about his ability to tailor his trial testimony to conform to the testimony of other witnesses. *Id.* at 536-38. *Martin* did not involve a comment on the defendant's demeanor.

Lawler also argues that the prosecutor's comment violated his right to a verdict based solely on the evidence under the Sixth Amendment. However, the Supreme Court in *State v. Barry* expressly rejected the argument that the Sixth Amendment provides for such a right. 183 Wn.2d 297, 312-17, 352 P.3d 161 (2015).

Nevertheless, Washington law generally provides that it is improper for a prosecutor to comment on the defendant's demeanor in closing argument when the defendant does not testify. In *State v. Klok*, the prosecutor commented that the defendant had been laughing during the trial. 99 Wn. App. 81, 82, 992 P.2d 1039 (2000). Division One of this court stated that "it is improper to comment on a defendant's demeanor and to invite the jury to draw from it a negative inference about the defendant's character." *Klok*, 99 Wn. App at 85.

In *State v. Smith*, the prosecutor commented on the defendant's demeanor, describing him as someone who looked like he had an attitude and a chip on his shoulder. 144 Wn.2d 665, 679, 30 P.3d 1245 (2001). The court cited *Klok* in stating that "it may be improper to comment on a defendant's demeanor so as to invite a jury to draw a negative inference about the defendant's character." *Smith*, 144 Wn.2d at 679. The court also concluded that the prosecutor's comments about the defendant's demeanor "were likely improper." *Id.*

2. Comment on Demeanor

The prosecutor's comment about Lawler eying and staring down MDJ was in the context of an argument about MDJ's credibility. The prosecutor was discussing how difficult it was for MDJ to testify about a nonconsensual sexual experience in an intimidating courtroom setting, particularly with Lawler sitting a few feet away. After Lawler objected, the prosecutor concluded:

20

> So here she is in what I would argue is a highly stressful situation for her. And was she acting in a way – again, going back to preconceived notions – the way we would expect from a victim? Well, that's up to you guys. But what I would ask is that when you're judging her credibility and the credibility of the testimony that you keep these things in mind in that lens that you view her testimony.

6 RP at 565.

This context shows that the prosecutor was not commenting on Lawler's demeanor or arguing that Lawler's demeanor was evidence of his guilt. The prosecutor did not suggest that it was significant that Lawler was staring down MDJ or even that Lawler was in fact staring her down. Instead, the point was that he *could* eye MDJ and stare her down as she was testifying, which made it more difficult for her to testify. The prosecutor did not argue or even imply that the jury should consider Lawler's demeanor in deciding the case.

Accordingly, we hold that the prosecutor's statement in closing argument that Lawler could eye MDJ and stare her down while she testified was not an improper comment on Lawler's demeanor.

C.     SAG CLAIMS

    1.      Prosecutorial Misconduct

Lawler asserts that the prosecutor's statements constituted prosecutorial misconduct because the prosecutor (1) bolstered a witness and appealed to sympathy during closing argument, (2) referenced evidence not previously admitted into the record, and (3) purposefully impugned defense counsel. We disagree.

        a.     Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438,

442, 258 P.3d 43 (2011). The court reviews a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). To establish prejudice, a defendant must show that the misconduct had a substantial likelihood of affecting the jury's verdict. *State v. Allen*, 182 Wn.2d 364, 375, 341 P.3d 268 (2015).

During closing argument, counsel is given wide latitude to assert reasonable inferences from the evidence. *In re Pers. Restraint of Glassman*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). However, a prosecutor should not make arguments designed to spark the passions and prejudices of the jury. *Id*. In addition, a prosecutor cannot impugn opposing counsel's role or integrity. *State v. Lindsay*, 180 Wn.2d 423, 431-32, 326 P.3d 125 (2014).

When the defendant fails to object to the challenged portions of the prosecutor's argument, he or she is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). The defendant must show that (1) no curative instruction would have eliminated the prejudicial effect, and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Id*. at 761.

        b.    Improper Closing Argument

Lawler argues that the prosecutor's closing argument was improper because it was calculated to inflame the passions and prejudices of the jury. During voir dire, the prosecutor asked the potential jurors how they would feel discussing a consensual sexual experience in front of a jury, to which one of the jurors responded, "[n]ot very comfortable." Voir Dire RP at 46. In closing argument, the prosecutor said,

> So we talked in voir dire and we talked about the topic of talking about a sexual encounter to the group during jury selection . . . And then we talked about well, what would it be like to talk about a nonconsensual experience in front of a group of people. And we seemed to have agreement that that would be an even more uncomfortable situation.

6 RP at 563. The prosecutor reminded the jury of the "uncomfortable situation" of testifying about a nonconsensual experience in order to put MDJ's testimony and credibility into context. Lawler did not object to these statements.

Viewed in the context of the entire trial, the prosecutor's statements were not improper. The statements were in direct reference to the previous voir dire discussion, and were meant to put MDJ's demeanor while testifying into context. Accordingly, we reject Lawler's prosecutorial misconduct claim on this basis.

      c.    Evidence Outside of the Record

Lawler argues that the prosecutor's closing argument was improper because it referenced evidence outside of the record. In closing argument, the prosecutor stated that before her sexual assault by Lawler, MDJ said "No, why are you doing this" and was crying. 6 RP at 587. Lawler argues that this evidence was not in the record because MDJ's actual words were "How could you want to do this after everything that's happened?" 5 RP at 479. Lawler did not object to this statement.

Viewed in the context of the entire trial, the prosecutor's statement was not improper. In closing argument, the prosecutor was outlining for the jury whether or not the sexual interaction was consensual. Although the prosecutor did not recite MDJ's exact testimony, he also did not claim to be quoting her. The point was that MDJ had stated that she made it clear to Lawler she did not want to have sexual intercourse and that she was crying. The prosecutor has wide

23

latitude to make reasonable inferences from the evidence, and the prosecutor's statement was not an untrue representation of MDJ's testimony. Accordingly, we reject Lawler's prosecutorial misconduct claim on this basis.

### d. Defense Counsel Dishonesty and Deception

Lawler argues that the prosecutor engaged in misconduct during rebuttal by referring to defense counsel's evidence as a red herring. He argues that this statement implies dishonesty and intentional deception by defense counsel and impugns defense counsel's integrity. Lawler did not object to this statement.

Viewed in the context of the entire trial and the evidence addressed in the argument, the prosecutor's statement was not improper. The evidence addressed in the prosecutor's rebuttal centered on the competing opinions of the expert witnesses, and their varying qualifications and experiences. The evidence addressed also concerned the credibility of the testifying witnesses. As a whole, the "red herring" argument drew attention to competing inferences, not to any deception by the defense. Accordingly, we reject Lawler's prosecutorial misconduct claim on this basis.

### 2. Ineffective Assistance of Counsel

Lawler asserts that defense counsel's failure to request a lesser included offense jury instruction for unlawful imprisonment constitutes ineffective assistance of counsel. We disagree.

As stated above, to prevail on an ineffective assistance of counsel claim, the defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33.

A defendant is entitled to an instruction of a lesser included offense if (1) each of the elements of the lesser offense is a necessary element of the greater offense charged (legal prong), and (2) the evidence of the case supports the inference that the defendant committed only the lesser crime (factual prong). *State v. Condon*, 182 Wn.2d 307, 316, 343 P.3d 357 (2015).

A person is guilty of second degree kidnapping if he or she "intentionally abducts another person." RCW 9A.40.030. The term "abduct" means to "restrain a person by either (a) secreting or holding him or her in a place where he or she is not likely to be found, or (b) using or threatening to use deadly force." RCW 9A.40.010(1). A person is guilty of unlawful imprisonment if he or she "knowingly restrains another person." RCW 9A.40.040(1).

Here, there is no question that the legal prong is satisfied – unlawful imprisonment is a lesser included offense of second degree kidnapping. *See State v. Davis*, 177 Wn. App. 454, 461, 311 P.3d 1278 (2013), *review denied*, 179 Wn.2d 1025 (2014). The only question involves the factual prong, whether there is evidence that Lawler committed *only* the lesser included offense of unlawful imprisonment and did not "abduct" MDJ.

The evidence shows that Lawler "abducted" MDJ by keeping her in the motel room by using or threatening to use deadly force. MDJ testified that when she wanted to leave with her friend, Lawler told her she could not leave and then forced her to stay by covering her mouth until she passed out. MDJ testified that Lawler threatened that she was not going to be able to go home and that she would not be able to see her children again. Finally, MDJ testified that after Lawler made these threats, he slept in front of the door in possession of a knife so that she could not leave the room. MDJ testified that Lawler stuck a knife into the door, locked the door, and told her neither of them were leaving and that he was going to kill her.

On the other hand, there was no evidence that Lawler prevented MDJ from leaving the room – unlawfully restrained her – without using or threatening deadly force. Accordingly, there was no evidence that Lawler committed only the lesser included crime.

Even if Lawler was entitled to a lesser included defense instruction, Lawler has not demonstrated that defense counsel's decision not to request such an instruction was not a legitimate trial tactic. By foregoing an unlawful imprisonment instruction, defense counsel set up an "all or nothing" scenario. Without an unlawful imprisonment instruction, the jury would have had to acquit Lawler if it found that he did not intentionally abduct MDJ. An all or nothing strategy can be a legitimate tactic with regard to lesser included offense instructions, and does not amount to ineffective assistance of counsel. *See State v. Breitung*, 173 Wn.2d 393, 398-400, 267 P.3d 1012 (2011); *Grier*, 171 Wn.2d at 43.

Accordingly, we hold that Lawler's claim for ineffective assistance of counsel fails.

3.    Sufficiency of the Evidence

Lawler asserts that there was insufficient evidence to convict him under the deadly weapons enhancements statute, RCW 9.94A.533. We disagree.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). This court assumes the truth of the State's evidence and draws all reasonable inferences from the evidence in favor of the State. *Id.* at 106. The court defers to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence. *Id.*

26

RCW 9.94A.533(4) provides enhanced sentencing for certain felony crimes committed when the offender was armed with a deadly weapon. Under RCW 9.94A.825, any knife with a blade longer than three inches is a deadly weapon.

At trial, the State presented evidence that Officer O'Dell arrested Lawler in possession of an eight-inch knife and a 12-inch blade. The jury heard evidence from MDJ that Lawler had access to a knife during the incident. The jury also heard evidence that Lawler had a knife, which he stuck into the door just prior to assaulting MDJ, and that when MDJ was able to exit the room Lawler chased her down the hallway with the knife.

Taken in the light most favorable to the State, a rational trier of fact could have found Lawler guilty of possession of a deadly weapon in committing second degree rape, second degree kidnapping, and harassment. Accordingly, we hold that the State presented sufficient evidence of possession of a knife in order to support the deadly weapon sentencing enhancements.

4. Cumulative Error Doctrine

Lawler asserts that he is entitled to relief under the cumulative error doctrine because the combined effect of the alleged errors denied him a fair trial. We disagree.

Under the cumulative error doctrine, the court may reverse a defendant's conviction when the combined effect of trial errors effectively denies the defendant his or her right to a fair trial, even if each error alone would be harmless. *State v. Lazcano*, 188 Wn. App. 338, 370, 354 P.3d 233 (2015), *review denied*, 185 Wn.2d 1008 (2016). The defendant bears the burden to show multiple trial errors and that the accumulated prejudice from those errors affected the outcome of his or her trial. *Id.* Because Lawler has failed to show multiple errors affecting his

conviction, we find that he failed to show that the accumulated prejudice of multiple trial errors affected the outcome of his trial.

We affirm Lawler's convictions.

MAXA, J.

We concur:

BJORGEN, C.J.

SUTTON, J.