**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 81577-6-I |
| Respondent, | |
| v. | DIVISION ONE |
| JAMES GARLIED DUTCHER, | UNPUBLISHED OPINION |
| Appellant. | |

ANDRUS, A.C.J. — James Dutcher appeals his jury conviction for possession of a stolen vehicle. For the first time on appeal, Dutcher claims that the trial court erred by failing to remove an allegedly biased juror and failing to issue an order excluding witnesses under ER 615. We conclude that the juror did not exhibit actual bias and that Dutcher waived his witness exclusion claim. Dutcher also argues that defense counsel was ineffective in failing to (1) challenge the allegedly biased juror, (2) move to exclude witnesses, (3) procure a key witness, and (4) convey the State's plea offer. We conclude that Dutcher failed to demonstrate that his trial counsel was deficient or that he suffered prejudice. We therefore affirm his conviction.

FACTS

On September 23, 2017, Andrei Shustov was sleeping in his office on the fourth floor of a commercial building in Lynnwood when he was awakened at about 5:30 am by the loud noise of an engine running outside. When Shustov looked out the window, he saw that his motorcycle—which had been parked outside—was now lying on its side in the bed of a light blue pickup truck that was driving away.

Shustov's motorcycle had a GPS device that allowed him to track its location using his phone. Shustov jumped in his car, called 911, and attempted to follow the pickup truck. As law enforcement vehicles converged in the area, the tracker showed the truck leaving the main road and turning into a residential neighborhood. Officer Joshua Magnussen observed Shustov parked on the side of the road and made contact. Watching the tracker, Officer Magnussen broadcast live location updates to the other responding officers. The tracker showed the truck taking multiple turns before stopping at a cul-de-sac.

A few minutes later, Officer James George intercepted an older pickup truck with a blue and yellow motorcycle lying in the rear bed. Officer George did not see anyone else in the area. Dutcher exited the truck and sat on the front bumper. Officer George observed a roll of thin green rope on the driver's seat of the truck, which appeared to be the same rope used to partially secure the motorcycle. Officer George arrested Dutcher and questioned him about the motorcycle. Dutcher initially claimed that he did not know how the motorcycle got in his truck. Dutcher then said that a friend helped him move the motorcycle. He then said

multiple friends were involved. When Officer George asked for their names, Dutcher responded that "his friends' names [weren't] important."

Officer Magnussen transported Shustov to the scene of the arrest. Shustov observed damage to the motorcycle's body and ignition, which he said was not there prior to this incident. Shustov also confirmed that he did not know Dutcher and did not give him permission to take the motorcycle.

The State charged Dutcher with one count of possession of a stolen vehicle. The court granted eight continuances prior to trial. The final continuance was granted at the defense's request due in part to "witness availability." Trial began on February 10, 2020.

Following motions in limine, voir dire commenced with a panel of jurors, one of whom would eventually be seated as juror 4. The court began by asking a series of questions regarding whether any potential jurors had personal experiences or life circumstances that might make it difficult to be fair and impartial in Dutcher's case. Several prospective jurors responded affirmatively, but juror 4 was not among them. The court then asked whether any jurors felt unable to follow the instructions or the law, or whether any felt they could not be fair and impartial for any other reason. No jurors indicated that they had an issue doing so.

The court then noted that several members of the panel, including juror 4, had written "no" in response to a question as to whether they could be fair or impartial. The court conducted an individualized inquiry with juror 4 as follows:

> COURT: Juror Number 4, your sheet indicated that you could not be fair and impartial.

JUROR 4: Because, you know, I'm an immigrant, so I -- you know, the system I used to be in it's you're proven to be guilty. I mean, you had to prove yourself. You're in the guilty.

COURT: Okay.

JUROR 4: So it's very different here. This is a different process.

COURT: Do you feel that you can follow our process of innocence until proven guilty?

JUROR 4: I will try, yes.

COURT: All right. So you heard me read the initial instruction that indicates that the defendant, as he sits here right now, is presumed to be innocent. Do you understand that?

JUROR 4: Yes.

COURT: And that that presumption continues throughout the entire trial.

JUROR 4: Yes.

COURT: All right. Do you have any problems presuming Mr. Dutcher's innocence right now?

JUROR 4: Not right now.

COURT: And do you understand that he is not required to testify or to present any evidence on his own behalf, that the burden lies with the State in this case?

JUROR 4: Yes. Yes, I do.

COURT: All right. And you feel that you can hold the State to its burden?

JUROR 4: I will try, like I said, yeah.

COURT: All right. The attorneys may have some follow-up questions. I appreciate that clarification. Thank you very much.

After the court completed its questions, the State and defense counsel began their voir dire. The State engaged juror 4 in the following exchange:

4

PROSECUTOR: All right. And so, Juror Number 4, I believe you stated earlier that where you come from, the -- I guess, the roles are reversed. People have to prove their innocence instead of the State proving them guilty?

JUROR 4: Yes. Oh, I want to clarify that. I'm from Hong Kong. But China have a totally different system. And we -- we have relatives in China, so we are totally aware of China system, yes.

PROSECUTOR: Okay. But you're -- you're aware of this system that we have here in the United States?

JUROR 4: I've been here long enough to understand the system, yes.

PROSECUTOR: And you would feel comfortable acting as a juror in our system?

JUROR 4: Like I said earlier, I will try, yes.

PROSECUTOR: Okay. Do you think there would be anything that would keep you from acting impartially?

JUROR 4: Nothing so far.

Neither the State nor the defense challenged any jurors for cause. The State used six of its peremptory challenges, while the defense used all seven. Neither side exercised a peremptory challenge to juror 4. Juror 4 was seated in the jury.

Shustov, Officer Magnussen, and Officer George testified for the State. Dutcher testified in his own defense. He said that on the day of the incident, an acquaintance named Dawn Brown contacted him at about 4:30 a.m. to ask if he would use his truck to help her friend "Pat" move another friend's motorcycle. Brown gave Dutcher Pat's phone number, and Dutcher called Pat to ask for details about the situation. Pat told Dutcher that the motorcycle belonged to a friend, and that it would be towed and impounded in the morning unless it was moved.

Dutcher agreed to help. When he arrived at the motorcycle's location, he saw a black Lexus sedan with four people inside. Pat and another individual got out of the car and loaded the motorcycle into the truck. They returned to the car and drove away, with Pat motioning Dutcher to follow. Dutcher drove behind the Lexus and called to ask where they were going. Dutcher then noticed police lights coming towards him, and asked Pat why that was happening. Pat advised Dutcher to ditch the truck and report it stolen, but Dutcher refused to do so. Instead, he pulled over and waited for police to arrive. Dutcher explained that Officer George's testimony regarding his conflicting story was the result of a misunderstanding.

The jury found Dutcher guilty of possession of a stolen vehicle. The court sentenced Dutcher to 20 days of electronic home detention and ordered him to pay restitution. Dutcher appeals his conviction.

ANALYSIS

Juror Bias

Dutcher argues that the trial court erred when it failed to sua sponte remove juror 4 based on actual bias. In response, the State contends that Dutcher failed to preserve this issue for appeal because he did not challenge juror 4 below. While appellate courts generally do not consider issues raised for the first time on appeal, a narrow exception exists for manifest error affecting a constitutional right. RAP 2.5(a)(3); State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). A party demonstrates manifest constitutional error by showing that the issue affects a constitutional right and results in actual prejudice. State v. O'Hara, 167 Wn.2d 91, 98-100, 217 P.3d 756 (2009).

Seating a biased juror violates a criminal defendant's constitutional right to a fair and impartial jury. State v. Guevara Diaz, 11 Wn. App. 2d 843, 851, 456 P.3d 869 (2020). Because the presence of a biased juror cannot be harmless, such error mandates a new trial without a showing of actual prejudice. Id. (quoting United States v. Gonzales, 214 F.3d 1109, 1111 (9th Cir. 2000)). For this reason, seating a juror who exhibits actual bias constitutes a manifest error that can be raised for the first time on appeal. Id. at 851-52 (citing State v. Irby, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015)). We therefore consider whether juror 4 manifested actual bias.

To protect the defendant's constitutional right to a fair and impartial jury, the trial court must excuse a juror for cause "if the juror's views would preclude or substantially hinder the juror in the performance of his or her duties in accordance with the trial court's instructions and the jurors' oath." State v. Lawler, 194 Wn. App. 275, 281, 374 P.3d 278 (2016). Either party may challenge a juror for cause based on actual bias. RCW 4.44.130; RCW 4.44.170(2). Actual bias is "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). The trial court must dismiss a biased juror even if neither party challenges that juror. Guevara Diaz at 855.

"If the court has only a 'statement of partiality without a subsequent assurance of impartiality,' a court should 'always' presume juror bias." Id. (quoting Miller v. Webb, 385 F.3d 666, 674 (6th Cir. 2004). But "[e]quivocal answers alone

are not sufficient to establish actual bias warranting dismissal of a potential juror." State v. Sassen Van Elsloo, 191 Wn.2d 798, 808-09, 425 P.3d 807 (2018)). Furthermore, "[a] trial court need not excuse a prospective juror with preconceived opinions if the juror can set those ideas aside and decide the case on the evidence at trial and the law as provided by the court." State v. Peña Salvador, 17 Wn. App. 2d 769, 785, 487 P.3d 923 (2021) (citing RCW 4.44.190). "The trial judge is in the best position to evaluate whether a particular potential juror is able to be fair and impartial based on observation of mannerisms, demeanor and the like." State v. Gonzales, 111 Wn. App. 276, 278, 45 P.3d 205 (2002).

Dutcher cites Guevara Diaz and Irby to support his claim that the trial court should have dismissed juror 4 for actual bias. In Guevara Diaz, a rape prosecution, a prospective juror admitted on a juror questionnaire that she could not be fair to both sides in a trial for sexual assault or abuse. 11 Wn. App. 2d at 846. Neither defense counsel nor the court questioned the juror individually as to whether she could be fair. Id. at 857. This court held that reversal was required because the juror exhibited actual bias and the record did not show the court subsequently received any information showing that the juror could be fair to both sides. Id. at 858.

In Irby, a potential juror who had worked for Child Protective Services stated that the experience made her "more inclined towards the prosecution" and admitted that she "would like to say he's guilty." 187 Wn. App. at 190. This court held that the juror's response showed actual bias and that reversal was required even in the absence of a challenge for cause. Id. at 197.

Guevara Diaz and Irby are readily distinguishable from Dutcher's case. Unlike the jurors in those cases, juror 4's initial statement of partiality was followed by individualized questioning of the juror by the trial court and the prosecutor. In response, juror 4 subsequently clarified that he did not have any problems presuming Dutcher's innocence, that he understood Dutcher was innocent until proven guilty, that he would "try" to hold the State to its burden of proof, and that he could act impartially. Juror 4's subsequent statements of impartiality indicate that he could be fair to both sides. Moreover, unlike the biased jurors in Guevara Diaz and Irby, juror 4's initial response was based on the fact that he was raised in a country with a different legal system, rather than from personal experiences involving crime.

Dutcher asserts that juror 4's statement that he would "try" evinces an inability or unwillingness to plainly state that he could be fair and impartial, thus requiring dismissal. We disagree. In this regard, Lawler is instructive. In Lawler, a potential juror stated "I don't see how I could be objective" based on three past experiences involving family members. 194 Wn. App. at 283. When the State asked whether he could set these experiences aside and judge the case on its merits, the juror replied, "Honestly, I think that would be a pain in the neck, you know. I don't think I would be able to do that with all these experiences." Id. There was no attempt to rehabilitate the juror, and he was seated on the jury. Id.

Division Two concluded that the juror did not manifest actual bias because his answers "were at least slightly equivocal," the court and defense counsel were alert to the possibility of biased jurors, and defense counsel did not use an

available peremptory challenge. Id. at 287. The court emphasized that "the trial court is in the best position to evaluate whether a juror must be dismissed" and that the court "must be careful not to interfere with a defendant's strategic decisions regarding jury selection." Id. at 288. Here, although juror 4's initial statement raised a presumption of bias, his subsequent statement evinced more certainty than those of the juror in Lawler. "When the juror has expressed reservations but agrees they can set those aside to be fair and impartial, it is within the trial court's discretion to allow that juror to remain." State v. Phillips, 6 Wn. App. 2d 651, 666, 431 P.3d 1056 (2018). Dutcher has not shown that the trial court erred in failing to dismiss juror 4 for actual bias.

Ineffective Assistance

Dutcher also argues that defense counsel provided ineffective assistance by failing to challenge juror 4 based on actual bias. We disagree.

Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution, a defendant is guaranteed the right to effective assistance of counsel in criminal proceedings. Strickland v. Washington, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish ineffective assistance of counsel, a defendant must demonstrate: (1) representation falling below an objective standard of reasonableness and (2) resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If a defendant fails to establish either element, the inquiry ends. State v. Hendrickson, 129 Wn.2d 61,

78, 917 P.2d 563 (1996). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "The threshold for the deficient performance prong is high, given the deference afforded to decisions of defense counsel in the course of representation." State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

We conclude that Dutcher fails to show deficient performance. First, the trial court's and the State's follow-up questioning established that juror 4 did not manifest actual bias. Second, defense counsel had ample opportunity to observe juror 4's demeanor during questioning. As in Lawler, defense counsel's decision not to use his last peremptory challenge to remove juror 4 suggests a tactical reason to retain him on the jury. And because we conclude that juror 4 was not actually biased, Dutcher has not shown that the result of the trial would have been different had defense counsel sought to remove him. Thus, he has not established prejudice.

Witness Exclusion

For the first time on appeal, Dutcher claims that the trial court should have sua sponte issued an order in limine pursuant to ER 615 excluding all witnesses from the courtroom while other witnesses are testifying and directing witnesses not to discuss the case or their testimony with other witnesses. We conclude that Dutcher waived this claim by failing to raise it below.

11

In relevant part, ER 615 provides, "At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses." The rule's purpose is "to discourage or expose inconsistencies, fabrication, or collusion." State v. Skuza, 156 Wn. App. 886, 895-96, 235 P.3d 842 (2010) (quoting 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 615.2, at 623 (5th ed. 2007)). An order excluding witnesses may be accompanied by an order directing the witnesses not to discuss the case or their testimony with other witnesses. U.S. v. Buchanan, 787 F.2d 477 (10th Cir. 1986).

During cross-examination of Shustov, defense counsel elicited testimony that Shustov had conversations with Officer George and with Myrick in the hallway outside the courtroom while they were waiting to testify. Defense counsel then used this fact to establish that Shustov's trial testimony included details that were not mentioned in the written statement Shustov gave to police on the day of the crime. Dutcher now argues that the trial court should have prevented this from happening in the first place, and the court compounded its error by failing to conduct a fact-finding hearing to determine the content of the hallway conversations. Dutcher contends actual prejudice resulted because the hallway conversations allowed Shustov and Officer George to present testimony that was more congruent.

But this alleged error does not amount to a manifest error affecting a constitutional right and it cannot be raised for the first time on appeal. Dutcher cites no authority for the proposition that this alleged error affects a constitutional right, and we are aware of none. Moreover, Dutcher has not shown that the alleged

12

error gave rise to actual prejudice, as is required to raise an issue for the first time on appeal. RAP 2.5(a)(3); Kirkman, 159 Wn.2d at 926. Defense counsel cross examined Shustov regarding the hallway conversations, and advantageously used this information to develop his theme that Shustov was remembering more on the witness stand than had actually occurred that morning. Dutcher has waived this issue by failing to raise it below.

Dutcher further contends that defense counsel's failure to invoke ER 615 during motions in limine, or to take action in the face of a potential violation of his due process right to a fair trial, constituted ineffective assistance. But the record shows that defense counsel made tactical use of the witnesses' ability to discuss the case freely. We are not persuaded that the result of the proceedings would have been different had counsel taken a different approach. Dutcher has not met his burden to establish that defense counsel rendered deficient performance or that he was prejudiced thereby.

Investigate and Procure Witness

Dutcher argues that defense counsel provided ineffective assistance by failing to interview or subpoena Dawn Brown as a witness for the defense. The record does not support Dutcher's claim.[1]

Defense counsel has a duty to conduct a reasonable investigation. In re Pers. Restraint of Elmore, 162 Wn.2d 236, 252, 172 P.3d 335 (2007). "Failure to

---

[1] As Dutcher correctly notes, this court may consider only facts contained in the record when an ineffective assistance claim is raised on direct appeal. State v. Estes, 188 Wn.2d 450, 467, 395 P.3d 1045 (2017). To rely on evidence outside of the trial record, a defendant must present the claim via a personal restraint petition. State v. Grier, 171 Wn.2d 17, 29, 246 P.3d 1260 (2011).

investigate or interview witnesses, or to properly inform the court of the substance of their testimony, is a recognized basis upon which a claim of ineffective assistance of counsel may rest." State v. Ray, 116 Wn.2d 531, 548, 806 P.2d 1220 (1991). Generally, "the decision whether to call a witness is a matter of legitimate trial tactics that will not support a claim of ineffective assistance of counsel." State v. Maurice, 79 Wn. App. 544, 552, 903 P.2d 514 (1995). But the presumption of competence may be overcome by demonstrating counsel's failure to investigate or subpoena necessary witnesses. Id. at 552.

Dutcher asserts that the record plainly demonstrates Brown was a critical witness for the defense because she would have corroborated his claim that he did not know that the motorcycle was stolen. He further asserts that the record demonstrates defense counsel's lack of effort in failing to interview Brown, serve her with a subpoena, or move to continue the trial to secure her presence.

But the record before us on appeal is nearly silent regarding the nature or extent of defense counsel's efforts to interview Brown or procure her trial testimony. The State's memorandum indicated that, prior to trial:

> Defense put the State on notice that it intends to call Ms. Dawn Brown as a witness in this case. The State has made numerous attempts to arrange an interview with Ms. Brown. However, defense has not been able to produce Ms. Brown for an interview.

Later, during motions in limine, the court asked defense counsel, "[y]ou no longer intend to call Dawn Brown; is that correct?" Defense counsel responded, "Correct. We – she's in the wind. We cannot find her." The court then noted that the State's request to examine her was no longer at issue.

14

Dutcher argues that defense counsel's failure to procure Brown was inexcusable. But the record before us contains no evidence that would establish defense counsel's acts or omissions in attempting to locate, interview, or subpoena Brown. It establishes only that any efforts defense counsel may have made to procure Brown's trial testimony proved futile. Dutcher also contends that defense counsel should have sought a ninth continuance to attempt to locate Brown. But nothing in the record suggests that such an effort might have proved fruitful.

Dutcher relies on cases holding that defense counsel's investigative efforts were constitutionally insufficient. State v. Jury, 19 Wn. App. 256, 264–65, 576 P.2d 1302 (1978) (failure to confer with prior counsel, failure to interview or subpoena witnesses, failure to research the law or facts until shortly before trial); State v. Estes, 188 Wn.2d 450, 463, 395 P.3d 1045 (2017) (failure to investigate sentencing consequences deprived defendant of the ability to make an informed decision regarding guilty plea); State v. A.N.J., 168 Wn.2d 91, 225 P.3d 956 (2010) (defense counsel's failure to investigate deprived defendant of opportunity to make a meaningful decision as to whether to plead guilty). These cases do not meaningfully support Dutcher's claim because there, unlike here, the record sufficiently documented counsel's deficiencies. On this record, we cannot conclude that Dutcher has met his burden to demonstrate that defense counsel's failure to procure Brown's trial testimony constituted deficient performance.

Similarly, Dutcher has not shown that the verdict would have been different had Brown been served with a subpoena. Dutcher asserts that Brown would have provided testimony favorable to the defense theory that he did not know the

15

motorcycle was stolen. Dutcher points to the text messages and calls he had with someone named "Dawn" on the morning of the crime. The evidence, a one-page screenshot from Dutcher's phone, corroborates that Dutcher exchanged several brief texts and calls with another person during the early morning hours on the day of the crime, and that the other person forwarded Dutcher the telephone number of another individual. To the extent that this sparse evidence supports an inference that Brown would testify as Dutcher claims, it equally suggests that Brown knowingly and criminally acted to assist in coordinating the theft of a motorcycle. Under such circumstances, it is probable that Brown would have asserted her constitutional right not to testify if subpoenaed. Dutcher has not established prejudice.

Plea Offer

Dutcher argues that defense counsel provided ineffective assistance by failing to keep him properly advised regarding the status of the case and plea negotiations. The record does not support this claim.

The right to effective assistance of counsel extends to the plea bargaining process. Estes, 188 Wn.2d at 463. To establish prejudice in this context, "a defendant must show the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 566 U.S. 156, 163, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012). "In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court." State v. Drath, 7 Wn. App. 2d 255, 267, 431 P.3d 1098 (2018) (quoting Lafler, 566 U.S. at 164). While there is no per se

16

rule requiring defense counsel to pursue plea negotiations in every case, failure to do so may constitute ineffective assistance if the conduct falls below an objective standard of reasonableness. State v. Holm, 91 Wn. App. 429, 437, 957 P.2d 1278 (1998).

Dutcher claims the record demonstrates defense counsel's lack of follow through regarding plea negotiations. We disagree. In fact, the record on appeal is almost entirely devoid of evidence regarding plea offer discussions or the lack thereof. The only reference to a plea offer is found in an omnibus order filed on August 7, 2019. The order—which Dutcher signed—reflects that "[t]he State has given the defendant notice that if he/she does not accept its plea offer it may take the following action: Add charges of Taking a Motor Vehicle without Permission, Possession of Stolen Property." This suggests that the only offer was to plead guilty to possession of a stolen vehicle as charged or face additional charges. Moreover, the State did not add any additional charges even though the case proceeded to trial. Dutcher has not established deficient performance or prejudice.

Affirmed.

_Andrus, A.C.J._

WE CONCUR: