IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36893-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ANTONIO CANTU, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Antonio Cantu appeals his convictions for bail jumping, taking a motor vehicle without permission, and driving under the influence. We accept the State's concessions—Cantu's bail jumping conviction should be dismissed and his offender score was miscalculated—and remand for resentencing. We otherwise affirm.

FACTS

Based on events in September 2017, the State charged Cantu with taking a motor vehicle without permission in the second degree, driving under the influence, and driving with a suspended license in the third degree. Cantu failed to appear at an omnibus hearing on June 5, 2018, and the court issued a bench warrant. The State then amended the information to add a charge of bail jumping.

*Jury selection*

During the trial court's voir dire, the court asked general questions to potential jurors and asked them to raise their paddle to indicate a yes answer. Venire juror 21's profile revealed he currently was a sergeant with the City of Moses Lake Police Department. He raised his paddle to a number of questions. For instance, he answered he had heard of the case, but said what he had heard would not unduly influence him. He also answered he knew both counsel, several witnesses, had been involved in a similar case as a witness or investigator, had friends or family involved in a similar case, was involved with a law enforcement agency, and had a close friend or family member involved with a law enforcement agency.

The parties then questioned venire juror 21 outside the presence of the potential jurors. He acknowledged he had previously supervised, currently worked with, and would supervise again three of the officers who were witnesses in the case. He said that he had met Cantu in the past, but could not remember where. When asked whether he would have any prejudice against Cantu because of this, he answered: "Like I said, name and kind of facial recognition, but I can't put it to any case or any of that." Report of Proceedings (June 5, 2019) (Voir Dire) (RP) at 58-59.

2

Defense counsel then asked:

[Defense]: Why do you think jury trials are important?

JUROR NO. 21: I think it's important for the Defendant to get his—his time in court so the evidence is heard. If they're claiming that they're innocent of the charges, evidence needs to be presented so that the truth . . . .

. . . .

[DEFENSE]: . . . You said "claiming" there. Aren't they presumed innocent?

JUROR NO. 21: Well, I would say that would be the one issue for me as my role is I believe everybody is innocent, however when I arrest somebody for a crime, I'm working off the—as soon as evidence is proved that—proves my case to me, that's why I'm arresting, right? And so coming in here, I struggle. I believe that he's innocent until proven guilty and I believe the trial has got to go forward. And if the evidence doesn't convict, I have no problem saying that he's not guilty. But it's hard for me to say once you're arrested and in that seat it's—does that make sense to you?

[DEFENSE]: It kind of does. So what I understand you're saying is that if you believe you have probable cause to arrest somebody, they're basically guilty and they don't get a doubt in your mind. It's very hard to get that back in your mind.

JUROR NO. 21: Not—yeah. Yeah. I'll be honest. Yeah.

[DEFENSE]: Okay. Shouldn't they continue to have that doubt no matter what?

JUROR NO. 21: They should. They should. And—and I'm talking from my perspective from my case. I don't know in his case what he's done, so I'd have to see all that information . . . .

[DEFENSE]: Right now he hasn't done anything.

JUROR NO. 21: Exactly.

. . . .

[DEFENSE]: So right now—

. . . .

[DEFENSE]: —guilty or not guilty?

JUROR NO. 21: He's innocent.

3

RP at 101-03. Defense counsel later asked: "[Are] you on the fence?" RP at 104. Venire juror 21 replied, "No, I'm not on the fence. . . . I'm right down the middle. . . . I'm on the innocent until proven guilty fence." RP at 104.

The parties also questioned venire juror 18 outside the presence of the potential jurors. She had earlier indicated she wanted to attend a sixth grade graduation for her stepson and might be upset and distracted if she were selected for the jury. Defense counsel asked:

> [DEFENSE]: So if you don't get to go [to the graduation], is that upset going to make it hard for you to remain neutral and use just the facts in this case?
> JUROR NO. 18: I don't think so.
> [DEFENSE]: You don't think so?
> Do you think it would influence your decision in any way?
> JUROR NO. 18: I'm not sure.
> THE COURT: When you say you're not sure, you're not sure what he means or—
> JUROR NO. 18: No, I'm not sure what he's—
> THE COURT: Okay.
> [DEFENSE]: So let me rephrase.
> You said you would be upset if you didn't get to go to the graduation?
> JUROR NO. 18: Yes.
> [DEFENSE]: Okay. If you were upset, would you be able to still sit on this jury and be neutral, not hold that upset against anybody here in the courtroom?
> JUROR NO. 18: I don't think so.
> . . . .
> [DEFENSE]: Okay. What if the Judge told you had to?
> JUROR NO. 18: (inaudible)—I guess.

. . . .

JUROR NO. 18:  Go with the flow.

. . . .

[DEFENSE]:  What do you mean by that?

JUROR NO. 18:  Well, I can't do anything about it.  I—

[DEFENSE]:  Okay.

. . . .

[DEFENSE]:  But in the back of your mind do you think that your being upset for not going to the graduation would influence how you might view the evidence presented in this case?

JUROR NO. 18:  I think I would have trouble concentrating.

. . . .

[DEFENSE]:  You may be distracted?

JUROR NO. 18:  Yes.

[DEFENSE]:  Okay.  If you were distracted, do you think you could be fair as a juror?

JUROR NO. 18:  I don't think so.

. . . .

THE COURT:  Finally, there's some question about you being distracted.  Do you think you'd be distracted?

JUROR NO. 18:  Yeah, a little bit because, I mean, I would be thinking of him, you know.

THE COURT:  Okay.  Well, yeah.  And it's at 1:30, is the graduation?

JUROR NO. 18:  Yeah.

THE COURT:  Do you think when we start back here at 1:30 and there's questions, you wouldn't be able to answer those questions?

JUROR NO. 18:  I would be answering them, yeah.

THE COURT:  Okay.  The trial won't start until later today where there's actual testimony or tomorrow.  You won't be distracted at that point, will you?

JUROR NO. 18:  No.

THE COURT:  Okay.  And you'll be able to answer all the questions?

JUROR NO. 18:  Yeah.

RP at 49-52. The court noted that it normally rules on hardship without argument, but allowed counsel to weigh in this time. The defense asked the court to excuse venire juror 18 for hardship. After a brief conversation about venire juror 18's statements, the court declined to excuse venire juror 18.

The trial court recommended that venire jurors 3, 5, and 15 be excused for bias due to close relationships with Cantu and some witnesses. Five additional venire jurors were dismissed for cause. Defense counsel used five of his six peremptory challenges, yet allowed venire jurors 18 and 21 to be seated on the jury.

*Bail jumping evidence and jury instruction*

The State called Miranda Pratt, who worked at the Grant County Clerk's Office as a deputy clerk and records custodian in 2018. Ms. Pratt testified that Cantu's omnibus hearing was scheduled for June 5, 2018, and that Cantu was not in court for that hearing. The State presented no other evidence to support the bail jumping charge.

With respect to that charge, the court instructed the jury:

> To convict the defendant of bail jumping, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1)    That on or about June 5, 2018 the defendant failed to appear before a court;
> (2)    That the defendant was charged with a crime under RCW 9A.56.075, Taking a Motor Vehicle without Permission in the Second Degree, a Class C Felony;

6

(3)     *That the defendant had been released by court order* with knowledge of the requirement of a subsequent personal appearance before the court; and

(4)     That any of these acts occurred in the State of Washington.

Clerk's Papers at 336 (emphasis added).

*Jury's verdicts and court's sentencing*

The jury found Cantu guilty of taking a motor vehicle without permission, driving under the influence, and bail jumping. It found Cantu not guilty of driving with a suspended license.

At sentencing, the trial court calculated Cantu's offender score. Cantu's juvenile court criminal history reflected three class B felonies (2002 second degree assault, 2002 second degree burglary, and 2003 residential burglary) and one class C felony (2003 attempted residential burglary). Cantu's adult court criminal history reflected one class B felony (2007 first degree theft) and three class C felonies (2006 second degree theft, 2006 third degree assault, and 2009 riot while armed). The judgment noted that Cantu's three adult class C felonies had washed out, implying that Cantu did not commit any crimes during the five years after he completed his 2009 felony sentence.

The trial court calculated Cantu's offender score as a 4 for both of Cantu's current felony convictions. Based on this score, the court entered a concurrent sentence of 12 months for bail jumping and 5 months for taking a motor vehicle without permission.

Cantu appealed.

ANALYSIS

Cantu raises three argument on appeal: (1) denial of his right to a fair trial due to juror bias, (2) insufficient evidence to support his bail jumping conviction, and (3) error in calculating his offender score.

NO ERROR FOR NOT EXCUSING TWO VENIRE JURORS

Cantu contends he was denied his constitutional right to a fair trial because the trial court did not excuse venire jurors 21 and 18. We address the applicable legal standards below.

Both the federal and state constitutions "guarantee a criminal defendant the right to trial by an impartial jury." *State v. Davis*, 175 Wn.2d 287, 312, 290 P.3d 43 (2012). Seating a biased juror violates this right. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 30, 296 P.3d 872 (2013). A trial judge has discretion to excuse a juror for cause if the juror's views would "'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S. Ct. 844, 83 L. Ed. 2d 841 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 100 S. Ct. 2521, 65 L. Ed. 2d 581 (1980)). A judge has an obligation to excuse a biased juror even if neither party challenges the prospective juror for cause. *State v. Guevera Diaz*,

11 Wn. App. 2d 843, 855, 456 P.3d 869, *review denied*, 195 Wn.2d 1025, 466 P.3d 772 (2020). We presume jurors are impartial and qualified to sit on a particular case; otherwise, they would have been challenged for cause. *State v. Latham*, 30 Wn. App. 776, 781, 638 P.2d 592 (1981), *aff'd*, 100 Wn.2d 59, 667 P.2d 56 (1983). Because "the trial court is in the best position to determine a juror's ability to be fair and impartial," we review juror challenges for manifest abuse of discretion. *State v. Noltie*, 116 Wn.2d 831, 839, 809 P.2d 190 (1991).

Actual bias is "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). Actual bias is a ground for challenging a juror for cause. *Id.* The mere fact that a juror has formed or expressed an opinion is not, in itself, sufficient to sustain a challenge for actual bias; rather, "the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially." RCW 4.44.190. A party claiming actual bias must establish it by proof, showing more than a possibility of prejudice. *Noltie*, 116 Wn.2d at 838; *State v. Munzanreder*, 199 Wn. App. 162, 176, 398 P.3d 1160 (2017).

9

Implied bias may exist when a juror stands in the relation of master and

servant to a party or has an interest in the action beyond that of an ordinary citizen.

RCW 4.44.180(2).  A defendant is entitled to a new trial due to a juror's implied bias in

certain exceptional circumstances.  *State v. Boiko*, 138 Wn. App. 256, 260-61, 156 P.3d

934 (2007).  In the absence of intentional concealment of information, a court—in

exceptional cases—may draw a presumption of implied bias from a juror's factual

circumstances.  *Id.* at 261-62 (quoting *State v. Cho*, 108 Wn. App. 315, 325, 30 P.3d 496

(2001)).  But "[a] relationship with the government, without more, does not establish

bias."  *Cho*, 108 Wn. App. at 324 (citing *Dennis v. United States*, 339 U.S. 162, 70 S. Ct.

519, 94 L. Ed. 734 (1950)).

Division Two of this court has addressed a trial judge's mandatory duty to excuse a

juror.  In *State v. Lawler*, 194 Wn. App. 275, 287-89, 374 P.3d 278 (2016), the trial court

did not sua sponte dismiss a juror for alleged bias.  The juror in question indicated he

would have difficulty remaining objective due to past experiences, it "'would be a pain in

the neck'" to follow the court's instructions, and he would be uncomfortable serving on

the jury.  *Id.* at 279-80.  Neither party nor the judge followed up on this juror's responses.

*Id.* at 280.  The trial court discussed its concerns about fairness and suggested two jurors

10

be dismissed. *Id.* Lawler exercised five of his six peremptory challenges, but did not strike the juror in question. *Id.* The jury found Lawler guilty, and he appealed. *Id.*

Division Two held that the trial court did not abuse its discretion in failing to excuse the juror. *Id.* at 289. In so holding, it relied on several factors. First, the trial court is in the best position to evaluate a juror's ability to be fair and impartial. *Id.* at 282 (citing *Noltie*, 116 Wn.2d at 839). Second, the juror's answers were slightly equivocal, rather than "'unqualified statement[s] expressing actual bias.'" *Id.* at 286 (quoting *State v. Irby*, 187 Wn. App. 183, 188, 347 P.3d 1103 (2015)). Third, the trial court was alert to the possibility of biased jurors—it paid close attention during voir dire and expressed concerns about several potential jurors. *Id.* at 287-88. Fourth, defense counsel was also aware of the possibility of biased jurors: it moved to excuse two other jurors for cause. *Id.* at 288. Fifth, Lawler did not use all of his peremptory challenges. *Id.* And sixth, the trial court appropriately refrained from interfering with a defendant's jury selection strategy. *Id.* With respect to this last factor, Division Two recognized there may have been legitimate tactical reasons not to challenge a juror, and "'the Sixth Amendment [to the United States Constitution] recognizes the defendant's right to control important strategic decisions.'" *Id.* at 285 (quoting *State v. Coristine*, 177 Wn.2d 370, 376, 300 P.3d 400 (2013)).

11

We utilize these factors in evaluating whether the trial court manifestly abused its discretion by not sua sponte excusing venire jurors 21 and 18.

*Venire juror 21*

Cantu contends venire juror 21 expressed actual bias during voir dire and his position as a police sergeant showed implied bias. We disagree.

First, it is well settled that the trial court is in the best position to evaluate juror fitness. The court observed the demeanor of jurors during voir dire and agreed with the defense that venire juror 21 should be questioned individually. The court confirmed that venire juror 21's ability to render impartial judgment would not be impacted by prior contacts with Cantu and asked whether venire juror 21 would give more weight to the State's witnesses because he knew them. The court was satisfied with his answers, and we generally defer to the trial court's decision in this regard.

Second, venire juror 21's answers were equivocal: he admitted he thought the people *he* arrested were guilty, but left open the possibility of innocence for others. He acknowledged Cantu was innocent until proved guilty and explained his belief that jury trials are important for truth finding. Venire juror 21's answers reflect a seriousness about the important role a juror serves in criminal proceedings.

12

Third and fourth, both the trial judge and defense counsel were alert to the possibility of bias. Several jurors were individually questioned on that basis. The court dismissed three venire jurors based on close relationships with the parties and two others for their inability to be fair and impartial. The record shows that the court and parties were cognizant of bias in the venire and acted to eliminate the risk.

Fifth, and importantly, Cantu had an unused peremptory challenge. We presume that defense counsel had a legitimate strategic reason for allowing venire juror 21 to remain on the jury; otherwise, Cantu would have used his remaining peremptory strike.

Finally, we agree that a trial judge should refrain from interfering with counsel's strategy during jury selection. A trial court may legitimately be less willing to exercise its discretion to dismiss a juror sua sponte than to grant a challenge for cause. *Lawler*, 194 Wn. App. at 288. The defense did not challenge venire juror 21 for cause and a sua sponte dismissal may have violated Cantu's Sixth Amendment right of control over his defense. *State v. Lynch*, 178 Wn.2d 487, 491, 309 P.3d 482 (2013). We conclude the trial court did not manifestly abuse its discretion by not dismissing venire juror 21 for actual bias.

We also are unconvinced that venire juror 21's supervisory position over three law enforcement witnesses, by itself, was a sufficient reason to dismiss for implied bias. We

13

have previously determined there is nothing inherent in the status of being a police officer that would support a finding of implied bias in a criminal case. *See Cho*, 108 Wn. App. at 324. Being a *supervisor* to police officer witnesses, as opposed to an officer of equal or lesser rank, reduces the real or perceived pressure to side with officer witnesses. We conclude the trial court did not manifestly abuse its discretion by not sua sponte dismissing venire juror 21 for implied bias.

*Venire juror 18*

Cantu contends venire juror 18 was erroneously empaneled because she told the court she would have trouble concentrating if she missed her stepson's graduation. We disagree.

Venire juror 18 originally said she would find it hard to concentrate if she missed the graduation. Follow-up questions outside the presence of potential jurors made it clear the graduation was that day at 1:30 p.m., and the trial would not start until *after* the graduation was over. Ultimately, venire juror 18 assured the court she could answer questions even when jury selection resumed at 1:30 p.m. Notably, there is no evidence that venire juror 18 had any difficulty answering questions that afternoon. We conclude the trial court did not manifestly abuse its discretion by denying Cantu's request to dismiss venire juror 18 for hardship.

INSUFFICIENT EVIDENCE TO SUSTAIN BAIL JUMPING CONVICTION

Cantu contends, and the State concedes, that the evidence was insufficient to support the bail jumping conviction because the State failed to produce any evidence that Cantu was released by a court order. We accept the State's concession and reverse Cantu's bail jumping conviction.

OFFENDER SCORE

Cantu contends his offender score was miscalculated because the trial court counted his 2003 conviction for attempted residential burglary, despite that conviction having washed out. The State concedes this issue and asks us to remand for resentencing with a corrected score. For the reasons explained below, we accept the State's concession.

An offender score calculation is reviewed de novo. *State v. Mutch*, 171 Wn.2d 646, 653, 254 P.3d 803 (2011). To properly calculate a defendant's offender score, the trial court must determine a defendant's criminal history based on prior convictions under the statutory formula provided in RCW 9.94A.525. *State v. Schwartz*, 194 Wn.2d 432, 438, 450 P.3d 141 (2019).

When calculating an offender score for a present, nonviolent conviction, the trial court adds 1 point for each adult prior felony conviction, 1 point for each juvenile prior

violent felony conviction, and one-half point for each juvenile prior nonviolent felony conviction. RCW 9.94A.525(7). A class C prior felony conviction "washes out" and is exempted from the offender score calculation if the offender has been crime free for five consecutive years after release from confinement or entry of judgment and sentence. RCW 9.94A.525(2)(c). The wash-out period need not immediately follow the prior conviction. *Schwartz*, 194 Wn.2d at 445.

Cantu's adult prior felony score is 1 because of his 2007 first degree theft conviction. Cantu's juvenile prior felony score is 2, calculated as follows: 1 point for second degree assault, a violent offense (*see* RCW 9.94A.030(55)(a)(viii)), plus one-half point for second degree burglary, and one-half point for residential burglary.

The State correctly concedes that Cantu's 2003 attempted residential burglary is a class C felony. This is because residential burglary is a class B felony, RCW 9A.52.025(2), and a person commits a class C felony if they are convicted of attempting to commit a class B felony. RCW 9A.28.020(3)(c). The State also correctly concedes that this conviction, similar to Cantu's other class C convictions, should have washed out. Adding Cantu's adult prior felony score of 1 to his juvenile prior felony score of 2 totals 3.

16

No. 36893-9-III
*State v. Antonio Cantu*

We remand for the trial court to dismiss the bail jumping conviction with prejudice and to resentence Cantu with a corrected offender score consistent with this opinion. A corrected offender score may include evidence of additional convictions. *See State v. Cobos*, 178 Wn. App. 692, 700-01, 315 P.3d 600 (2013), *aff'd*, 182 Wn.2d 12, 338 P.3d 283 (2014).

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Korsmo, J.

17