# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54681-7-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MICHAEL MUTHEE MUNYWE, | |
| Appellant. | |

MAXA, J. – Michael Munywe appeals his convictions of second degree rape and unlawful imprisonment with sexual motivation and his sentence. The convictions arose out of an incident in which Munywe grabbed the wrist of a 15-year-old girl as she was walking down the street, then directed her into an alcove and raped her, and then continued to grab her wrist when she walked away.

We hold that (1) the trial court did not err by declining to dismiss a juror who was coughing excessively during testimony, (2) the trial court did not improperly comment on evidence by using the victim's initials rather than her full name in the to-convict instructions, (3) the trial court did not abuse its discretion in finding that the rape and unlawful restraint were not the same criminal conduct for sentencing purposes, (4) the trial court did not err in imposing community custody supervision fees as determined by the Department of Corrections (DOC) as a legal financial obligation (LFO), and (5) we decline to consider or reject Munywe's multiple claims asserted in his statements of additional grounds (SAG).

Accordingly, we affirm Munywe's convictions and sentence.

FACTS

*Background*

On November 21, 2018, it was dark when 15-year-old AG got off a bus in downtown Tacoma. As AG started to walk home, Munywe called out to her. AG initially thought Munywe was one of her mother's friends, but when she turned around, she realized she was mistaken. Munywe kept talking to AG as she turned around and continued walking home.

Munywe walked beside AG and continued to talk to her. AG walked past the route to her house because she did not want Munywe to know where she lived. Munywe then began to hold AG's wrist. AG tried to pull away more than once, but she could not.

The two crossed the street and walked up a hill. Munywe was still holding AG's wrist and he led her up the hill, walking in front of her. Munywe led AG to an alleyway where he sat down on a ledge and pulled AG down to her knees close to him. Munywe took out his penis and forced it into AG's mouth. AG eventually pushed Munywe off her, got up, and began to walk away.

AG attempted to call her mother, but she did not answer. As AG continued to walk, Munywe grabbed her by the wrist again. AG then dialed 911 and pretended like she was speaking with her mother so Munywe would not know she was calling 911. She told the operator to pick her up at the McDonald's. Munywe eventually let go of AG and the two walked to McDonald's.

As Munywe and AG walked toward McDonald's, Tacoma Police officer Jeffrey Thiry saw and detained Munywe, later arresting him. Thiry took Munywe to police headquarters, where detective William Muse interviewed him.

2

The State charged Munywe with first degree rape and first degree kidnapping.

*Pretrial Issues*

On January 22, 2020, the scheduled first day of trial, Munywe addressed the trial court himself and claimed that the time for trial rules and his constitutional right to a speedy trial had been violated. He requested a stay to allow the court to consider his motion to dismiss. Munywe also claimed that defense counsel had failed to provide him with discovery materials, which prejudiced his ability to prepare a defense. The court deferred addressing Munywe's motions until the next day.

The next day, defense counsel stated that Munywe wanted him to raise the speedy trial issue. Counsel stated that he did not intend to file a written motion Munywe had prepared because he did not believe that there was a reasonable basis for the motion. The trial court stated that it appreciated Munywe's concerns because the case was approximately 420 days old, but the court did not believe there was a speedy trial violation after reviewing the file.

*CrR 3.5 Hearing*

At the CrR 3.5 hearing, Thiry testified about his detention and arrest of Munywe. Thiry mentioned Munywe's accent to him, and Munywe said that he was from Kenya. Thiry testified that Munywe's English was very good and that he did not exhibit any confusion.

Detective Muse testified that he advised Munywe of his *Miranda*[1] rights. Munywe said he understood the rights read to him and never expressed any confusion about those rights. A video of the interrogation was played for the trial court. Even though Muse knew that English was not Munywe's first language, Muse did not provide an interpreter. But Munywe also never

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

requested an interpreter. And Muse did not think that Munywe needed an interpreter or that Munywe did not understood him.

The trial court ruled that Munywe's statements were admissible, concluding that Munywe understood his *Miranda* warnings, was not confused about them, and willingly spoke to the police.

*Trial*

At trial, Munywe had a Swahili interpreter. AG, Thiry, and Muse testified to the facts presented above.

At a recess, the trial court mentioned the health of juror 8. The court noted that the juror was coughing and drying her eyes. The court was concerned that the juror could not be paying attention to all of the evidence because she was distracted by her condition. Defense counsel stated that "it did seem to me that she was always focused on the evidence that was coming out." 7 Report of Proceedings (RP) at 713. He asked the court to inquire before dismissing the juror. The prosecutor stated, "I have seen her, and I have noticed the coughing. It does look like she's paying attention, but she does have that issue." 7 RP at 714.

At the end of the day, the trial court questioned juror 8. Juror 8 stated that despite her coughing episodes, she was still able to listen to the evidence. She also stated that she had been sick, but was getting better. The court did not dismiss juror 8.

The court gave to-convict instructions for the charged offenses and the lesser included offenses of second and third degree rape and unlawful imprisonment with sexual motivation. Each instruction used AG's initials rather than her full name. The prosecutor stated that initials were used in public documents for rape victims. The jury convicted Munywe of second degree rape and unlawful imprisonment with sexual motivation.

*Sentencing*

At sentencing, Munywe argued that the rape and unlawful imprisonment with sexual motivation were a part of the same criminal conduct for the purposes of calculating his offender score. The court stated:

> Here, the rape occurred by . . . a little ledge between the two buildings. It was stopped. There was a period of time, and then Mr. Munywe marches the victim down the street and holds her against her will. . . . The jury could have easily concluded that he was simply going to take her to another location and rape her again.

RP at 1017. The court concluded:

> The identity of the victim is clearly established as the same, but the location and timing of the crimes is different.
> After the original rape was concluded, Mr. Munywe could have simply walked away, but he didn't. I do believe that the facts will indicate that he either had ahold of the victim or had his arm around her. She was in no way free to leave. He coerced her in walking several blocks down the street from the location of the rape to the McDonald's on 9th and Tacoma Avenue.

RP at 1024-25. Therefore, the court ruled that the two offenses did not constitute the same criminal conduct.

Regarding LFOs, the prosecutor asked that the trial court impose the DNA collection fee and the crime victim penalty assessment. No other LFOs were discussed. In the judgment and sentence, the court imposed the two requested LFOs but struck the criminal filing fee. In addition, standard language regarding community custody included the provision "pay supervision fees as determined by DOC." Clerk's Papers at 83. An appendix to the judgment and sentence stating community custody conditions contained the same provision.

Munywe objected to several community custody conditions in the appendix to the judgment and sentence, and the trial court struck or modified some of the conditions. Munywe did not object to the imposition of supervision fees as a community custody condition.

5

Munywe appeals his convictions and his sentence.

ANALYSIS

A.    FAILURE TO DISMISS JUROR

Munywe argues that the trial court erred in not dismissing a juror who was coughing excessively.  We disagree.

The trial court has "a mandatory duty to dismiss an unfit juror" under RCW 2.36.110 and CrR 6.4(c)(1).  *State v. Lawler*, 194 Wn. App. 275, 284, 374 P.3d 278 (2016).  And RCW 2.36.110 places a continuous obligation on the trial court to dismiss a juror who is unable to perform the duties of a juror.  *Lawler*, 194 Wn. App. at 284.  We review for an abuse of discretion a trial court's decision whether to dismiss a juror.  *Id*. at 282.

Here, the trial court raised the issue of juror 8's coughing, stating a concern that she might have missed some evidence.  But neither Munywe nor the prosecutor shared that concern. And the court questioned juror 8, who said that she had been able to listen to the evidence despite her coughing.  Therefore, the court had no reason to dismiss juror 8.

We hold that the trial court did not abuse its discretion in not dismissing juror 8.

B.    USE OF VICTIM'S INITIALS IN TO-CONVICT INSTRUCTIONS

Munywe argues that the trial court improperly commented on the evidence in violation of article IV, section 16 of the Washington Constitution when it used AG's initials in the to-convict instructions.  We disagree.

Division One of this court rejected this comment on the evidence argument in *State v. Mansour*, 14 Wn. App. 2d 323, 329-33, 470 P.3d 543 (2020), *review denied* 196 Wn.2d 1040

(2021). Munywe urges us to reject the holding in *Mansour*, but we agree with Division One's reasoning. Therefore, we reject Munywe's argument regarding the use of AG's initials.[2]

C.     SAME CRIMINAL CONDUCT

Munywe argues that the second degree rape and unlawful imprisonment with sexual motivation convictions constitute the same criminal conduct for sentencing purposes. We disagree.

1.     Legal Principles

Multiple current offenses that encompass the same criminal conduct are counted as one offense for purposes of calculating a defendant's offender score. RCW 9.94A.525(5)(a). Under RCW 9.94A.589(1)(a)[3], two or more offenses constitute the same criminal conduct when they "require the same criminal intent, are committed at the same time and place, and involve the same victim."

If any of the three elements is not present, the offenses are not the same criminal conduct. *State v. Johnson*, 12 Wn. App. 2d 201, 211, 460 P.3d 1091 (2020), *aff'd on other grounds,* 197 Wn.2d 740 (2021). And we generally apply the definition of "same criminal conduct" narrowly to "disallow most same criminal conduct claims." *Id.* The defendant has the burden of showing that two or more offenses constitute the same criminal conduct. *Id.*

---

[2] Munywe argues that this case is different from *Mansour* because here the prosecutor remarked in closing argument that initials were used in the jury instructions for rape victims. But the court in *Mansour* explained that the trial court's reference to a person as a "victim" does not convey the court's personal opinion of the case. 14 Wn. App. 2d at 330. Munywe has not established that a comment from *the prosecutor* changes this result.

[3] RCW 9.94A.89 has been amended since the events of this case transpired. Because these amendments are not material to this case, we do not include the word "former" before RCW 9.94A.589.

We review a trial court's determination of whether two offenses encompass the same criminal conduct for an "abuse of discretion or misapplication of law." *State v. Aldana Graciano*, 176 Wn.2d 531, 537, 295 P.3d 219 (2013). Under this standard, a trial court abuses its discretion if the record supports only one conclusion regarding same criminal conduct and the court makes a contrary ruling. *Id.* at 537-38. "But where the record adequately supports either conclusion, the matter lies in the court's discretion." *Id.* at 538.

"A person is guilty of unlawful imprisonment if he or she knowingly restrains another person." RCW 9A.40.040(1). To restrain means "to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty." RCW 9A.40.010(6). And restraint is "without consent" if it is accomplished by physical force or intimidation. RCW 9A.40.010(6)(a).

2.   Analysis

The question here is whether Munywe's unlawful imprisonment occurred at the same time and place as the rape. Munywe primarily argues that any unlawful restraint before the rape occurred at the same time and place as the rape. However, the trial court focused on Munywe's restraint of AG *after* the rape occurred.

The evidence showed that AG was walking away from the area where she was raped when Munywe grabbed her wrist again. He held onto AG as the two walked toward the McDonald's, where AG told the 911 operator she was going. During this time, Munywe was restraining AG. This evidence supports the trial court's conclusion that Munywe's restraint after the rape occurred at a different time and location than the original rape.

Munywe argues that because AG chose to walk to the McDonald's, she was not unlawfully imprisoned. But it is immaterial that Munywe allowed AG to walk in the general

direction that she wanted. RCW 9A.40.040(1) states that "[a] person is guilty of unlawful imprisonment if he or she knowingly restrains another person." There is no dispute that Munywe forcibly grabbed AG's wrist after the rape and held on to it for a period of time as they walked. Even though AG was walking in the direction that she chose, she still was being restrained.

Munywe also argues that the trial court's reliance on conduct that occurred after the rape is inconsistent with how the State charged first degree kidnapping, for which unlawful imprisonment was a lesser included offense. He points out that the information charged that Munywe kidnapped AG with the intent to commit rape. However, the court found that the post-rape restraint also could have been with the intent to commit rape: "The jury could have easily concluded that he was simply going to take her to another location and rape her again." RP at 1017.

We hold that the trial court did not abuse its discretion in determining that the second degree rape and unlawful imprisonment were not the same criminal conduct.

D.    COMMUNITY CUSTODY SUPERVISION FEES

Munywe argues that the trial court erred in imposing community custody supervision fees because he was indigent. We disagree.

RCW 9.94A.703(2)(d) provides that "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the department." Supervision fees are considered discretionary LFOs because they are waivable by the trial court. *State v. Spaulding*, 15 Wn. App. 2d 526, 536, 476 P.3d 205 (2020). However, because supervision fees do not constitute "costs" under RCW 10.01.160(3), they can be imposed even if the defendant is indigent. *Id.* at 536-37. Therefore, the trial court had authority to impose supervision fees as an LFO even though Munywe was indigent.

Munywe claims that the trial court expressed its intention to impose only mandatory LFOs. Not so. The court made no statement that it was imposing only mandatory LFOs; it merely struck one discretionary LFO.

We hold that the trial court did not err when it imposed community custody supervision fees as an LFO.

E.     SAG CLAIMS

Munywe asserted multiple claims in three SAGs. We do not reach most of these arguments because they rely on evidence outside the record, were not preserved below, or are immaterial, and we reject Munywe's assertion that sufficient evidence did not support his convictions.

1.     Ineffective Assistance of Counsel

Munywe claims that defense counsel improperly agreed to trial continuances and improperly refused to make his speedy trial motion on the first day of trial. But the reasons for the continuances and the lengthy delay are not in the record. Without that information, we cannot evaluate whether trial counsel was ineffective in agreeing to the continuances or in failing to present the speedy trial motion. And without that information, we cannot evaluate Munywe's time for trial and speedy trial claims to determine whether he suffered any prejudice.

Munywe's second and third ineffective assistance of counsel claims also involve facts outside the record. The record does not show what defense counsel provided to Munywe before trial or whether Munywe requested counsel to present a sentencing alternative.

Because Munywe's claims rely on facts outside the record, we cannot consider them in this direct appeal. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). They are more properly raised in a PRP. *Id.*

10

2.    *Miranda* Violation

Munywe claims his *Miranda* rights were violated when he was not given an interpreter during his interrogation.  We decline to consider this issue.

Because Munywe did not raise this issue in the trial court, we will not consider the issue unless there was a manifest error affecting a constitutional right.  An error is manifest if the appellant shows actual prejudice.  *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009).  The appellant must make a plausible showing that the claimed error had practical and identifiable consequences at trial.  *Id.*  The focus is on whether the error "is so obvious on the record that the error warrants appellate review."  *Id.* at 100.

Here, the record shows that Munywe understood his *Miranda* rights even without an interpreter.  The two officers testified that Munywe's English was very good.  He was responsive when the police asked him questions and he never expressed any confusion.  At no point during the interrogation did Munywe ask for an interpreter.  The court found Munywe understood each and every right read to him, he waived his *Miranda* rights, and was not confused about them.  As a result, there was no manifest error, and we decline to consider this argument.

3.    Fabrication, Mistreatment, Spoliation

Munywe argues that (1) the State fabricated and falsified evidence during trial, (2) he was mistreated and subjected to psychological torture while being detained and interrogated after his arrest, and (3) the State discarded crucial pieces of DNA evidence.  All of these claims rely on matters outside of the record.  Again, we cannot consider these claims in this direct appeal and they are more properly raised in a PRP.  *Alvarado*, 164 Wn.2d at 569.

4.    Sufficiency of Evidence/Other Claims

Munywe asserts 30 instances where the evidence was insufficient to establish particular facts and raising additional claims. Most of these assertions relate to immaterial facts, rely on matters outside the record, or were not preserved, and therefore do not support relief.

Munywe does make a few material assertions – that there was insufficient evidence that (1) he restrained, abducted or kidnapped AG; and (2) any crimes took place. We reject those assertions – there was substantial evidence to support the kidnapping and rape convictions.

CONCLUSION

We affirm Munywe's convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
LEE, C.J.

_____
GLASGOW, J.